LAWRENCE R. KULAK, ESQ
1078 East 15th Street
Brooklyn, NY 11230
Telephone: 212-681-7970
 Email: kulaklaw39@gmail.com
Lawrence R. Kulak, Esq.
Attorney for Creditor 5405-5411 18th Avenue Trust

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X          **Chapter 11**

**IN RE:**                                                                        **Case No.: 25-40119-jmm**

**BEAUX EQUITIES LLC ,**

                                                                                          **AFFIRMATION**

          **DEBTOR.**

--------------------------------------------------------------X

          Lawrence Kulak, an attorney admitted to practice before this Court hereby affirms

under penalty of perjury as follows:

          1.          This application is by order to show cause rather than by motion due to the

urgency of the relief requested

          2.          I make this affirmation in support of the secured creditor, the  5405-5411

18th Avenue Trust's (the "Trust") second motion to dismiss the Debtor's Bankruptcy

Petition with prejudice for cause pursuant to 11U.S.C. 1112; or alternatively for an

Order appointing a Chapter 11 Trustee pursuant to 11 U.S.C. 1104(a)(1); or

alternatively an Order lifting the automatic stay pursuant to 11 U.S.C. 362 (d)(1)

and (4)(A) so that a Judgment of Foreclosure and Sale and Order Confirming the

Referee Report dated July 20, 2023, and entered In New York State Supreme

Court's Clerk Office on September 5, 2023, under Index No. 502954/2022  can

proceed to foreclosure sale for cause because the Movant will suffer irreparable

harm by continuation of the stay; and for such other relief as to the Court deems just and proper.

3.    This Court has jurisdiction over the Debtor's Chapter 11 case, this adversary proceeding and the Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A) and (E). Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

4.    The necessity of bringing the instant motion is a result of the stunning and serious disclosures concerning misconduct committed by the Debtor set forth in the letter of Debtor's counsel dated November 10, 2025.  The first page of the letter is signed by Arum J. Rosen, Esq.  Attached to Mr. Rosen's letter is a two-page letter signed by David S. Goldwasser Chief Restructuring Officer.  Attached to Mr. Goldwassser's letter are statements for a Dime Bank account owned by Grey Oak Holdings LLC for the months of January 2025 through October, 2025.  For the sake of brevity, Mr. Rosen's letter and Mr. Goldwasser's letter are referred to as "Debtor's counsel's letter" which is attached hereto as Exhibit A.

5.     The letter details the Debtor's knowing diversion and concealment of money received as rent for the real property of which the Debtor claims an "equitable interest" as its sole asset, from  the bankruptcy estate into the  bank account having nothing to do with the Debtor, but which is owned by Grey Oak Holdings LLC ("Grey") a company owned by Yaakov Pollak, the Debtor's sole member (Exhibit A).   The letter also details the representation made by Pollak that, according to Pollak, only one tenant was paying rent.  Counsel   described that representation as "inaccurate"; another more accurate description of the

representation is that it was false (Exhibit A).

6.    The letter sets forth what Pollak gave as his reason for his diversion of money from the bankruptcy estate; to wit: the diverted money was for "past due rent obligations arising prior to the bankruptcy filing". The letter describes such reason as, "grossly erroneous" (Exhibit A).

7.    During an appearance before the Court on November 5, 2025, your affirmant disclosed that he had been given documentation showing that the Debtor had been concealing and diverting assets belonging to the estate. That disclosure is what led to Debtor's counsel's letter.

8.    Prior to that Court appearance, the Debtor had filed eight Monthly Operating Reports (MORs) as well as a Statement of Financial Affairs ("SOFA"). Attached hereto as Exhibits B-I is each MOR with the corresponding Dime Bank Account Statement.

9.    A comparison of the eight MORs with the contents of Debtor's counsel's Letter and the the Dime Bank monthly statements unequivocally establishes that each of the eight MORs, affirmed under penalty of perjury were false. Debtor's counsel's letter states that rents received from three tenants, "Pharmacy", "Light Store" and "Table Settings" were concealed and diverted from the estate into the Dime Bank account (Exhibit A). Specifically, according to Debtor's counsel's letter, $70,649.20 of rent from the Pharmacy was concealed and diverted. $18,889.03 of rent from the Light Store was concealed and diverted. $2,500.00 of rent from Table Settings was concealed and diverted (Exhibit A). As such, as total of $92,038.23 was concealed and diverted from the estate.

10.     Several critical observations must be made.  First, ***none*** of the $92,038.23 deposited into the Dime Bank account was listed on the MORs (Exhibits B-I). Second, the amount of rent listed on the eight MORs filed before November 5, 2025, was $37,064.90 meaning the ***overwhelming*** amount of rent was concealed and diverted from the estate (Exhibits B-I).  Third, upon information and belief the real property only has five separate rental areas of which only the three tenants set forth in Debtor's counsel's letter, the Pharmacy, Light Store and Table Settings were paying rent.  That means rent from ***all*** paying tenants was being concealed and diverted.

## AS TO DISMISSAL FOR CAUSE

11.     Pursuant to 11 U.S.C 1112(b)(1) a court may, "... dismiss a case under this chapter, [whichever] is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate".  11 U.S.C. 1112 (4) sets forth various forms of conduct that constitute "cause" warranting dismissal of the bankruptcy proceeding.  The list of grounds for converting or dismissing Chapter 11 case under § 1112(b) is illustrative, not exhaustive, and the court may consider other grounds and use its equitable powers to reach an appropriate result. *In re AdBrite Corp.*, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003).

12.     Included in the statutory list defining cause is the "gross mismanagement of the estate".  11 U.S.C.1112 (4)(B).  The gross mismanagement of the estate has been held to include a debtor's unauthorized sale of property and use of some of the sale proceeds, as well as debtor's failure to disclose the sale after the fact.  *In re*

*Carrington,* 710 F. Supp. 3d 248, 256 (SDNY 2024).  The court noted that the debtor's conduct was not excused even if she acted with good intentions.  *In re Carrington, supra* at 257.  The court concluded that the debtor demonstrated her inability or unwillingness to adhere to requirements designed to protect creditors and the estate.  *In re Carrington, supra* at 257.  A debtor's failure to disclose the post-petition sale of estate property has been determined to be gross mismanagement of the estate constituting cause for dismissal.  *Matter of Moultrie*, 586 B.R. 498, 504 (Bankr. N.D. Ga. 2018).

13.    In the instant matter there has not just been an unauthorized disposition of estate property or a failure of disclosure.  Here, the Debtor has engaged in a continuous course of conduct diverting and concealing assets unquestionably belonging to the estate, to wit: rent, continuing from the date the petition was filed until the time its misconduct was brought to the Court's attention.  It is obvious that if the Debtor's misconduct was not inadvertently discovered and brought to the Court's attention, the Debtor's misconduct would have continued all to the detriment of the creditors.

14.    The concealment of assets rightfully belonging to the estate is such grievous conduct that its commission is a crime punishable by up to 5 years in prison.  18 U.S.C. 152(1).  Obviously, the commission of criminal conduct on the part of the Debtor constitutes cause warranting dismissal of the petition.

15.    In addition, a debtor in possession is obligated to file monthly operating reports that include information about the case and certain financial transactions and "keep a record of receipts and the disposition of money and property received". 28

C.F.R. § 58.8; Fed. R. Bankr. P. 2015.  Filing untimely, incomplete or inaccurate monthly operating reports has been found to constitute cause warranting dismissal of a Chapter 11 petition.  See *In re Giuliani*, 661 B.R. 493, 502 (Bankr. S.D.N.Y. 2024).

16.     In the instant matter, every monthly operating report filed by the Debtor starting with the first one filed and continuing with each successive one filed until the time its misconduct was brought to the Court's attention was false.  This is despite each one's accuracy being affirmed under penalties of perjury.  The falsity of each was the same, each reported only a minimal amount of the rent actually received by the Debtor for the month being reported.  Between January 2025 and August, 2025, the Debtor only reported 33.7% of rent received.  Each failed to disclose that the vast majority of rent being collected by the Debtor was being diverted and concealed into an undisclosed and unrelated bank account.  A comparison of the fraudulent MORs with the bank statements of the account that the concealed and diverted rent was deposited shows approximately $100,000 was concealed and diverted (Exhibits B-I).

17.     It is respectfully submitted that the Debtor's continuous and repetitive filing of false MORs which was obviously done in furtherance of its concealment and diversion of assets belonging to the estate, constitutes a scheme to defraud the Court, the Trustee and the creditors.  The filing of such false MORs constitutes criminal conduct punishable by up to 5 years in prison.  18 U.S.C. 157 (3).  Again, the commission of criminal conduct on the part of the Debtor constitutes cause warranting dismissal of the petition.

18.    The Debtor's mendacity was not limited to the MORs.  On question 21 of its Statement of Financial Affairs, ("SOFA") the Debtor answered that it was not holding or controlling any property that is owned by another entity.  Attached hereto as Exhibit J is the SOFA.  The SOFA was executed under penalty of perjury on February 7, 2025.

19.    On August 11, 2025, the Debtor signed a "LANDLORD CONSENT TO TRANSFER OF LLC MEMBERSHIP INTEREST" ("Landlord Consent")..  The document related to the assignment of the membership interest of Pharmahouserx LLC from one individual to another.  Pharmahouserx LLC is a tenant at the real property.  Attached hereto as Exhibit (K) is a copy of the Landlord Consent.

20.    On section 3 (f) of the Landlord Consent, the Debtor represented that it was holding, "a security deposit of $30,954.70 pursuant to the lease.  Transferors herewith assign all right, title and interest in the security deposit to Transferee as of the effective date."  The Commercial Lease Extension Agreement dated November 28, 2022, attached to the Landlord Consent makes reference to a security deposit in paragraph 4.  In fact, the assignee of the Pharmahouserx LLC membership interest reimbursed the assignor for its payment of the security deposit.  Attached hereto as Exhibit (L ) is a copy of the closing statement regarding the Pharmahouserx LLC assignment.

21.    There can be no doubt that the Debtor had been paid a security deposit in the amount of $30,954.70, and according to its own unequivocal representation in the Landlord Consent, was holding same.  However, in total contradiction to all of that the Debtor stated under penalty of perjury on its SOFA that it was not holding a

security deposit.

22.     New York State General Obligations Law 7-103(1) states that a security deposit, "shall not be mingled with the personal monies or become an asset of the person receiving the same".  General Obligations Law 7-103 is applicable to commercial leases.  *Harlem Capital Center LLC v. Rosen & Gordon LLC,* 145 A.D.3rd 579 (1s Dept. 2016).  A tenant cannot waive requirements of General Obligations Law 7-103 and any agreement that attempts to do so is void.  N.Y. Op. Atty. Gen. No. 18 (1970).

23.     It is obvious that the Debtor filed a false SOFA just as it filed 8 false MORs.

24.     Moreover, a Chapter 11 debtor in possession's transactions other than those in the ordinary course of business must be authorized by the court after notice and a hearing.  *In re Crystal Apparel, Inc.,* 220 B.R. 816, 829 (Bankr. S.D.N.Y. 1998). Extraordinary transactions undertaken by Trustee or Debtor in possession without notice and hearing are unenforceable, 11 USCA 363; *In re Lavinge, 183 B.R. 65* (S.D.N.Y 1995).  It is respectfully submitted that since the real property only consists of 5 separate rental areas, all with, upon information and belief long-term leases, the mere execution of a lease is not within the Debtor's ordinary course of business and therefore would require court authorization.  As the court in *In re Crystal Apparel, Inc.* in comparing rental property with many units to rental property with few units, it observed, "Yet, a debtor owning a building with three store units will need to obtain court approval of a new lease because it is making a long-term commitment, the terms affect the feasibility of any plan. Nor is obtaining

court approval of only three transactions burdensome". *In re Crystal Apparel, Inc., supra* at 832.

25. If the execution of a lease of a unit which is part of rental property with only a few units is not part of the ordinary course of business, then certainly the consent of an assignment of such a lease is even more unusual thereby requiring the debtor in possession to obtain court approval before consenting to such assignment. In the instant matter the Debtor did not seek approval of the Court before executing the assignment. The reason for the Debtor's failure is obvious. The Landlord Consent includes express acknowledgment by the Debtor that the tenant assignor had been paying the sum of $7064.90 per month in rent and as of August 11, 2025, there was no acreage. (Exhibit    Landlord Consent). If the Debtor has sought Court approval the Landlord Consent would have come to light thereby revealing the Debtor's scheme to conceal and divert estate assets. It is respectfully submitted that the Debtor's conduct in this regard is also evidence of cause for dismissal.

26. It is respectfully submitted that the Debtor's sole purpose in filing the instant petition was to delay the foreclosure sale of the real property. During the delay the Debtor has grotesquely abused the bankruptcy laws in an attempt to funnel money away from the estate and out of reach of the Court, the Trustee and the creditors. Such conduct must not be condoned by the Court; overwhelming cause for dismissal of the petition exists and the Court must do so.

### AS TO APPOINTMENT OF CHAPTER 11 TRUSTEE

27. In the event the Court declines to dismiss the petition as requested above, then it is respectfully submitted that a Chapter 11 Trustee must be appointed. 11

U.S.C. 1104(a)(1) states that, "At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor".

28.    It has been observed that, ""One of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization." *Savino,* 99 B.R. at 526. Consequently, "[w]here, as here, the Debtor fails to disclose material and relevant information to the Court and creditors, a Chapter 11 trustee is required." *Tradex Corp. v. Morse,* 339 B.R. 823, 833 (Dt. Ct. MA 2006).

29.    Furthermore, "Courts have found that a Chapter 11 trustee should be appointed when there "is either a perceived dishonesty or withholding of information or a debtor's inability to provide accurate records and reports". *In re: Peak Serum, Inc.,* 623 B.R. 609,620 (Bankr. Dt. CO 2020).

30.    Once a bankruptcy court determines that cause exists for appointment of a trustee under section 1104(a)(1) or that appointment of a trustee would be in the best interest of creditors under section 1104(a)(2), it has no discretion but must appoint a trustee.  *In re: Peak Serum, Inc. supra* at 621.  The party seeking the appointment

of a Chapter 11 Trustee must prove by clear and convincing evidence that the appointment of a trustee is warranted.  *In re: Bayou Grp., LLC*, 564 F.3d 541, 546 (2d Cir. 2009);  *In re Eletson Holdings Inc.,* 659 B.R. 426, 430 (Bankr. S.D.N.Y. 2024).

31.     It is respectfully submitted that clear and convincing evidence exists that establishes cause to appoint a Chapter 11 Trustee.  In the Debtor's counsel's letter to the Court, it clearly states that, "three (3) tenants made rent payments into the Grey account during this period".  Exhibit A Goldwasser letter p.2.  The amount of those concealed and diverted payments totaled $92,038.23.  The amount of rent listed in the MORs file prior to the Court becoming aware of the concealed and diverted payments (January-August) was only $37,064.90. That alone overwhelming establishes cause for the appointment of a Chapter 11 Trustee.   Coupled with the cause that exists as set forth above for the dismissal of petition, there must be a Chapter 11 Trustee appointed in the event the petition is not dismissed.

32.     It must be observed that Debtor's counsel acknowledges that based upon the disclosures in counsel's letter to the Court, the Debtor can no longer continue in its current position.  According to counsel, "in light of recent developments, we have determined that such an expense (bringing in a property manager) is both reasonable *and necessary to preserve estate assets"*(emphasis added)).  (Exhibit A).  Such admission on the part of the Debtor's own counsel is remarkable and further establishes the need for the appointment of a Chapter 11 Trustee in the event the petition is not dismissed.

33.     The "bringing on" of counsel's property manager does not negate the need

for the appointment of a Chapter 11 Trustee.  All of the MORs were affirmed under penalty of perjury by David Goldwasser, Chief Restructuring Officer.  Upon information and belief the real property is zoned as multi use and has 3 commercial areas and 2 residential units.  The MORs for January and April showed no cash receipts for either month.  The MORs for February, March, May, June and July showed cash receipts of only $5000 for each month.  The MOR for August showed cash receipts of $12,064.90.  It is incomprehensible that Mr. Goldwasser did not question why the real property was generating so few cash receipts for the months of January through July because such minimal cash receipts were not realistic even to a casual observer.  If the real property was occupied by non-paying tenants, which it was not, why had eviction proceedings not been commenced?  This glaring "lack of cash receipts" should have triggered a basic investigation such as a brief conversation with the tenants that should have occurred before Mr. Goldwasser affirmed under penalty of perjury the accuracy of the MORs. It should be noted that the minimal cash receipts in the false MORs is contrary to the debtor's claim of an ability to reorganize. Such lack of attention requires the appointment by the Court of an independent Chapter 11 Trustee instead of the "property manager" referred to in counsel's letter.

34.    In addition, according to Debtor's counsel letter, counsel became aware of the, "assignment of lease" on October 24, 2025.  At that time, [Mr. Goldwasser] signed the attached assignment … "(Exhibit A)".  At the outset it must be noted that no Exhibit B was attached to the letter.  Assuming that the assignment referred to is the Landlord Consent referred to above in paragraph 14, then it appears that on

October 24, 2025, *prior to* the Movant's disclosure to the Court of the concealment and diversion of estate assets, Mr. Goldwasser had information showing that all of the MORs he signed under penalty of perjury as well as the SOFA, were false. The fact that no notification had been given to the Court, the Trustee or Creditors that the the previously filed MORs and SOFA were false, shows that appointment of the property manager is insufficient to protect the estate and Creditors.

## AS TO LIFTING THE AUTOMATIC STAY

35.    11 U.S.C. 362 (d)(1) states that, " On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

36.    As was shown above overwhelming evidence of cause exists for the dismissal of the instant petition. Cause also exists for the appointment of a Chapter 11 Trustee. Such evidence includes the disclosure by Debtor's counsel that the Debtor concealed and diverted nearly $100,000.00 from the estate not a bank account controlled by Yaakov Pollak. Such evidence also includes the representation made by Debtor's counsel that the Debtor's conduct makes it necessary to take steps to protect estate assets. The evidence also includes the defalcation by the Debtor of a security deposit paid by a tenant.

37.    Certainly such conduct on the part of the Debtor, which may very well rise to the level of criminality, establishes cause to lift the automatic stay.    That

evidence, coupled with the fact that the Debtor has failed to make any payments to the Movant since May 11, 2023, overwhelmingly establishes that there is no adequate protection for the Movant's interest in the real property therefore warranting the lifting of the automatic stay so the foreclosure sale can procced.

38.    In addition, 11 U.S.C. 362 (d)(4)(A)    states that, "**(4)** with respect to a stay of an action against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--

**(A)** transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval;

39.    It is respectfully submitted that the Debtor's concealment and diversion of estate assets from the date of the petition until its misconduct was disclosed to the Court 11 months later, as well as its filing of false MORs and SOFA, establish a scheme to defraud creditors warranting the lifting of the automatic stay.  See *In re: Town & Country Event Center LLC,* 673 B.R. 445,451(Bankr. E.D. Calif. 20250; see also *In re:CGR Ltd.,* 56 B.R. 305 (Bankr. S.D. Texas 1985).  The scheme to defraud creditors need not be proved.  *In re: Town & Country Event Center LLC, supra* at 451.

WHEREFORE, Movant respectfully requests an Order of this Court dismissing the instant proceeding with prejudice or in the alternative, appointing a Chapter 11 Trustee and lifting the automatic stay so that a Judgment of Foreclosure and Sale and Order Confirming the Referee Report dated July 20, 2023, and entered In New York State Supreme Court's Clerk Office on September 5, 2023, under Index No. 502954/2022  can proceed to foreclosure sale.

Dated: December 15th 2025

/s/ Lawrence Kulak
Attorney for 5405-5411 18th Avenue Trust
1078 East 15th Street
Brooklyn NY 11230
T: 646-213-0030