**LAW OFFICES OF CHARLES WERTMAN P.C.**
Counsel to Yaakov Pollak
100 Merrick Road, Suite 304W
Rockville Centre, New York 11570
Tel. (516) 284-0900
Charles Wertman, Esq.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
In re: Case No. 25-40119 (jmm)
Chapter 7

**BEAUX EQUITIES LLC,**

Debtor.
---------------------------------------------------------x

**OBJECTION OF YAAKOV POLLAK TO THE CHAPTER 7 TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. § 105(a) AND RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, TO APPROVE STIPULATION OF SETTLEMENT**

TO THE HONORABLE JIL MAZER-MARINO,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Yaakov Pollak ("Pollak"), the sole member and manager of the debtor Beaux Equities LLC (the "Debtor"), submits this objection to the motion (the "Motion") of Gregory M. Messer, solely in his capacity as Chapter 7 Trustee of the Debtor's estate (the "Trustee"), for entry of an order under 11 U.S.C. § 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure approving a Stipulation of Settlement (the "Stipulation") between the Trustee and the Shorivger Trust, Raphael Grossman as Trustee of the Shorivger Trust, and Israel Grossman (collectively, the "Shorivger Trust"). ECF No. 116. The exhibits and schedules cited below are annexed to this objection. Pollak respectfully states as follows:

## PRELIMINARY STATEMENT

The Trustee asks the Court to approve a settlement that releases every claim the estate holds against the Shorivger Trust, dismisses two pending actions with prejudice, and leaves the Shorivger Trust in undisturbed record title to three Brooklyn buildings, in exchange for a payment of $180,000 that is refundable to the Shorivger Trust to the extent the allowed claims prove to be less than that sum. The Motion is supported by no declaration from the Trustee, no appraisal, no rent roll, no valuation of the claims being released, no consideration of any alternative to settlement, and no account of what the Trustee investigated before agreeing to the number.

What the Motion leaves out matters more than what it contains. The Debtor's adversary complaint rests on two propositions. The first is that the deed dated March 29, 2016 to the Shorivger Trust (the "Deed") was delivered as security for money advanced to others and is therefore a mortgage under New York Real Property Law § 320 rather than a conveyance. The second is that the obligations the Deed was given to secure were made at two percent per month, computed on stated principal amounts that in several instances exceeded the sums actually advanced, and are therefore open to challenge as usurious. On November 25, 2025, this Court denied the Shorivger Trust's motion to dismiss the complaint, denied the Shorivger Trust's motion for summary judgment, and denied the Debtor's cross motion with leave to renew the Debtor's first cross claim. Motion ¶¶ 19, 28. The Motion recites those rulings in its procedural history and then says nothing further about them. It does not mention Real Property Law § 320. It does not mention the Heter Iska instruments, the rates they carry, or the usury statutes. It expresses no view on the probability of success on either theory.

A court cannot find that a settlement falls above the lowest point in the range of reasonableness when the record contains no measurement of the range. The Trustee concedes

that the burden of persuasion is his. Motion ¶ 40. He has given the Court a number and a conclusion, and nothing in between. Deference to a trustee's business judgment presupposes that the judgment was informed, and the Motion does not say what informed it.

A second defect is independent of value. The Stipulation was signed by the Trustee and the Shorivger Trust. It provides that the "Adversary Proceedings," a defined term that includes the removed Powercap action, "shall be dismissed with prejudice." Stipulation ¶ 2(a); Motion ¶¶ 20, 35. The Powercap action contains cross claims belonging to Yaakov Pollak and Moshe Pollak individually. Motion ¶ 21. Those cross claims are not property of this estate, and the Trustee has no authority to dismiss or release them. In the very same paragraph, the Stipulation preserves the Shorivger Trust's right to assert "any defense or claim of any type, kind or nature against Yaakov Pollak and Moshe Pollak." Stipulation ¶ 2(b). The instrument therefore extinguishes the non-debtors' affirmative claims with prejudice while leaving the claims against them fully intact, and it does so without their signatures and without their consent.

Pollak does not ask the Court to decide the usury question or the Real Property Law § 320 question on this Motion. He asks the Court to observe that the Trustee has not addressed either one, and that the record therefore does not permit the finding Rule 9019 requires. Pollak asks that the Motion be denied. If the Court is not prepared to deny it, Pollak asks in the alternative that the hearing be adjourned so the Trustee can make the record the Rule requires, and that any order ultimately entered be conformed so that it disposes only of claims the Trustee owns.

## <u>THE RECORD ON THIS OBJECTION</u>

1. Annexed to this objection are the following:

**Exhibit 1.** The thirteen Heter Iska instruments, together with the checks, deposit records and bank records annexed to them, filed as NYSCEF Doc. No. 261 in *Powercap Partners LLC v. Beaux Equities LLC, et al.*, Index No. 524411/2017 (Sup. Ct. Kings Cnty.), removed to this Court as Adv. Pro. No. 1-25-01037. The same instruments are in the record of that proceeding at ECF No. 10, Exhibit C, and at ECF No. 19, Exhibits A and B.

**Exhibit 2.** The deed dated March 29, 2016, as recorded in the Office of the City Register, Kings County, on November 29, 2017, CRFN [___________]. The deed is also in the record at Adv. Pro. No. 1-25-01037, ECF No. 10, Exhibits A and D, and at Adv. Pro. No. 1-25-01105, ECF No. 5, Exhibit A.

**Exhibit 3.** The two letters prepared in connection with the Deed, dated March 30 and March 31, 2016, filed at Adv. Pro. No. 1-25-01105, ECF No. 5, Exhibits B and C, and at Adv. Pro. No. 1-25-01037, ECF No. 10, Exhibits E and F.

**Exhibit 4.** The complaint commencing *Beaux Equities LLC v. Shorivger Trust, Raphael Grossman and Israel Grossman*, Adv. Pro. No. 1-25-01105, ECF No. 1, filed September 2, 2025.

**Exhibit 5.** The Debtor's opposition to the motion to dismiss that complaint, Adv. Pro. No. 1-25-01105, ECF No. 7.

**Exhibit 6.** The affidavit of Israel Grossman in support of that motion to dismiss, Adv. Pro. No. 1-25-01105, ECF No. 5, attachment 8, and his affirmation at Adv. Pro. No. 1-25-01037, ECF No. 19, attachment 18.

**Exhibit 7.** The two orders of this Court signed November 25, 2025: the Order Denying Motion to Dismiss, Adv. Pro. No. 1-25-01105, ECF No. 12, and the Order Denying Motions for Summary Judgment, Adv. Pro. No. 1-25-01037, ECF No. 25.

**Exhibit 8.** The Verified Answer with Affirmative Defenses, Counterclaims and Cross Claims interposed by the Debtor, Yaakov Pollak and Moshe Pollak in the Powercap action, filed with the notice of removal at Adv. Pro. No. 1-25-01037, ECF No. 1, attachment 3.

**Schedule A.** A summary of the instruments annexed as Exhibit 1.

**Schedule B.** Computations drawn from the instruments and bank records annexed as Exhibit 1.

2. Each of these is a filing in this case, a filing in the adversary proceeding pending before this Court, a filing in an action removed to this Court, or an instrument of public record. Pollak respectfully requests that the Court take judicial notice of them, and of the dockets in this

case and in the adversary proceeding, under Federal Rule of Evidence 201, made applicable by Bankruptcy Rule 9017.

3. Pollak submits no declaration with this objection, and none is needed. He does not bear the burden on this Motion. The Trustee does, as the Motion concedes. Motion ¶ 40. Every fact on which this objection relies appears in the Trustee's own papers, in the records of this Court, or on the face of the documents annexed hereto. Should the Court conclude that an evidentiary record is required before the Motion can be decided, Pollak stands ready to provide one.

**STANDING**

4. Pollak is the sole member and manager of the Debtor. The Motion so describes him. Motion ¶ 44. Bankruptcy Rule 9019(a) requires that notice of a proposed compromise be given to creditors, the United States trustee and the debtor. A party entitled to notice of a motion is a party entitled to be heard on it, and the Debtor speaks through Pollak for that purpose.

5. Pollak is separately aggrieved in his individual capacity. A party has standing to be heard where it is directly and adversely affected pecuniarily by the relief sought. See *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988); *In re DBSD N. Am., Inc.*, 634 F.3d 79, 89 (2d Cir. 2011). The Stipulation calls for dismissal with prejudice of an action in which Pollak holds cross claims of his own, while expressly preserving the claims asserted against him. Motion ¶ 21; Stipulation ¶ 2. Whatever else may be said about the settlement, an order that extinguishes a person's affirmative claims and preserves his adversary's claims against him affects that person pecuniarily and directly.

6. The Trustee anticipates an argument that Pollak has no economic stake because he would receive nothing even if the litigation succeeded, and because the Shorivger Trust would

restrain any distribution to him in any event. Motion ¶¶ 44, 48. That reasoning proves too much. Whether a surplus distribution to an equity holder would later be reached by that equity holder's own creditors has nothing to do with whether the estate should realize value on its assets, and a trustee may not justify abandoning an estate asset on the ground that someone other than the estate would ultimately benefit from it. In any event, the premise is supplied by nothing but the Motion's own assertion. There is no analysis behind it and no evidence supporting it.

7. Finally, the Trustee's position on this point is in tension with the settlement he asks the Court to approve. If, as the Motion says, the only party with a stake in the outcome of the litigation is Pollak, then Pollak is the one person whose objection the Court should want to hear before that litigation is dismissed with prejudice.

## BACKGROUND

### *A. The Property and the Case*

8. The Debtor acquired the real property known as 5405, 5409 and 5411 18th Avenue, Brooklyn, New York 11204 (the "Property") by bargain and sale deed on or about September 22, 2010. Motion ¶ 9. The Property consists of three buildings containing commercial and residential tenants. Motion ¶ 11. It is the only asset of consequence in this estate, and the Motion identifies no other.

9. The Debtor filed a voluntary chapter 11 petition under subchapter V on January 9, 2025. ECF No. 1. The case was converted to chapter 7 by order dated January 29, 2026, on the motion of the 5405-5411 18th Avenue Trust, which appears in this case through the same counsel as the Shorivger Trust. ECF Nos. 68, 80. The Trustee was appointed on February 4,

2026. ECF No. 82. The Motion states that the section 341 meeting was held on March 9, 2026. Motion ¶ 8. The docket reflects that the meeting was adjourned twice and held on April 27, 2026.

10. Eight claims have been filed. Claims 1, 2 and 5 are general unsecured claims totaling $38,423.46. Claims 6, 7 and 8 are the claims of the chapter 11 professionals, totaling $77,242.25. Claim 3-1 is the Shorivger Trust's protective secured claim. Claim 4-1 is the claim of the first mortgagee, which the Motion states is "now controlled by the Shorivger Trust parties." Motion ¶ 29.

***B. The Advances and the Heter Iska Instruments***

11. Between November 2014 and July 2017, Israel Grossman arranged a series of advances to Pollak individually and to YGM Group LLC, an entity that is not the Debtor. Thirteen of those advances are documented on printed "Heter Iska" forms issued by the Maysharim Rabbinical Court, each of which names the Shorivger Trust or Israel Grossman as the "Investing Partner" and Pollak and/or YGM Group LLC as the "Managing Partner." Copies are annexed as Exhibit 1, which is a true copy of NYSCEF Doc. No. 261 in the Powercap action. On their face the instruments reflect advances totaling approximately $1.7 million. Schedule A.

12. Section 2(d) of the printed form provides for payment of a stated percentage "annual return." On each of the instruments, the word "annual" is struck through in handwriting and replaced with the word "monthly," and the rate entered is two percent. Exhibit 1. Several of the instruments add further consideration on top of that rate. Exhibit A-2 adds "4% fixed." The first instrument in Exhibit A-3 adds "5 points." The second instrument in Exhibit A-3 adds "5%." Exhibit 1.

13. Section 3(a) of each form provides that if the money is not returned by the stated date, "the monies shall be considered reinvested under the terms of this Iska." Section 3(b)

provides that where the parties have executed additional documents such as a promissory note, mortgage note or guarantee, "[a]ny mention of a loan, interest, points, or other similar terms are for legal purposes only." Exhibit 1.

14. Two percent per month is twenty-four percent per annum without compounding. The instruments do not stop there. On several of them the Shorivger Trust withheld a portion of the stated principal at funding, so that the sum actually advanced was less than the sum on which the monthly charge was computed and less than the sum repayable. Exhibit A-2 states an advance of $115,000 and carries the handwritten notation "4% fixed" in addition to two percent monthly; it was funded by a check for $110,400 posted on the day the instrument was signed, a shortfall of $4,600, which is exactly four percent of the stated principal. Exhibit A-9 states $165,000 and was funded in the amount of $150,125. Exhibit A-10 states $200,000 and was funded in the amount of $182,000. Exhibit A-11 states $218,000 and was funded by checks totaling $200,000. Exhibit A-7 records an advance of $27,000 with the figure $29,160 written above it, an increase of exactly eight percent. Exhibit 1; Schedules A and B.

15. The terms were short, which magnifies the effect of the sums withheld. Exhibit A-10 was signed on May 25, 2016 and was returnable on August 1, 2016, a term of sixty-eight days, so that a shortfall of nine and nine tenths percent of the sum advanced is the equivalent of more than fifty percent per annum before the monthly charge is counted at all. Exhibit A-11 was signed on November 17, 2016 and was returnable on December 23, 2016, a term of thirty-six days. Separately, and without regard to the sums withheld, the monthly charge was computed on the stated principal rather than on the sum advanced. Two percent of $200,000 is $4,000 per month measured against $182,000 actually received, which is a rate of approximately 26.4 percent per annum on simple interest and without any compounding. Schedule B.

16. None of the advance proceeds were paid to or received by the Debtor. The checks and bank records annexed within Exhibit 1 are payable to Pollak and to YGM Group LLC. None of them is payable to the Debtor.

***C. The Deed***

17. On or about March 29, 2016, Israel Grossman prepared and Pollak executed the Deed, purporting to convey the Debtor's interest in the Property to the Shorivger Trust. Motion ¶ 14; Exhibit 2.

18. Two contemporaneous letters accompany the Deed. The first, prepared by Israel Grossman and signed by Pollak, provides that transfer of the Property was contingent on the advances not being repaid by December 31, 2016 and that no further mortgages would be placed on the Property. The second, prepared and signed by Grossman, provides that he would not record the Deed until December 31, 2016 so long as interest on the advances was current through June 30, 2016. Exhibit 3.

19. The Shorivger Trust continued to advance money to Pollak and YGM Group LLC for more than a year after the date of the supposedly absolute conveyance. The instruments annexed as Exhibits A-9 through A-12 are dated April 28, 2016, May 25, 2016, November 17, 2016 and July 2017. Exhibit 1; Schedule A. Throughout that period, and for eight years afterward, the Debtor continued to manage the Property. The Trustee concedes the point: as of the petition date in January 2025, "the Debtor had been managing the Property." Motion ¶ 10.

20. The Deed was not recorded until November 29, 2017, more than a year and a half after it was executed. Motion ¶ 14. As the Debtor's opposition to the motion to dismiss pointed out, recording the instrument as an outright conveyance rather than treating it as security avoided

New York mortgage recording tax, which on the amounts at issue would have exceeded $80,000. Exhibit 5.

21. The Shorivger Trust asserts that the Deed was given in consideration of $2,834,567 paid in accordance with instructions given by the Debtor's principal. Motion ¶ 14. The Heter Iska instruments on their face total approximately $1.7 million. Neither the Motion nor the Stipulation reconciles the difference of roughly $1.1 million, and neither identifies what portion of the asserted consideration represents principal advanced and what portion represents accrued charges computed at the rates described above. Exhibit 1; Schedule A.

### ***D. The Litigation and This Court's November 25, 2025 Rulings***

22. On September 2, 2025, the Debtor commenced an adversary proceeding against the Shorivger Trust seeking a declaration that the Deed is a mortgage, an order setting aside the Deed and the Shorivger Trust mortgage as void, and disallowance of Claim 3-1. That proceeding is Adv. Pro. No. 1-25-01105. Motion ¶ 16; Exhibit 4. A separate objection by the Debtor to Claim 3-1 was filed on July 17, 2025, fully briefed, and remains pending; it is adjourned to October 14, 2026. ECF Nos. 51, 52, 57, 58.

23. The Shorivger Trust moved to dismiss. The Debtor opposed. The Shorivger Trust replied. By order signed November 25, 2025, this Court denied the motion. Adv. Pro. No. 1-25-01105, ECF Nos. 5, 7, 9, 12; Motion ¶¶ 17 through 19; Exhibits 5 and 7. The defendants answered on November 20, 2025, discovery closed on January 23, 2026, and the proceeding is set for a pre-trial conference on October 14, 2026. Adv. Pro. No. 1-25-01105, ECF Nos. 11, 12, 13.

24. In the removed Powercap proceeding both sides moved for summary judgment on the cross claims. The Debtor's motion annexed the deed, the Iska notes, the two 2016 letters and

a 484-page deposition of Israel Grossman. Adv. Pro. No. 1-25-01037, ECF No. 10. The Shorivger Trust opposed with, among other things, an affirmation of Israel Grossman and an affirmation of a Heter Iska expert. Adv. Pro. No. 1-25-01037, ECF No. 19. By order signed November 25, 2025, the Court denied both motions. Adv. Pro. No. 1-25-01037, ECF No. 25. The Motion states that the denial of the Debtor's motion was with leave to renew the Debtor's first cross claim. Motion ¶ 28. The claim that the Deed is a mortgage rather than a conveyance has therefore survived a Rule 12(b)(6) challenge in one proceeding and a summary judgment motion in the other, on a record built through completed discovery.

25. Separately, on December 29, 2017, one month after the Deed was recorded, Powercap Partners LLC commenced an action in Supreme Court, Kings County against the Debtor, Yaakov Pollak, Moshe Pollak and the Shorivger Trust parties. The plaintiff's claims were dismissed. What remains are cross claims by the Debtor, Yaakov Pollak and Moshe Pollak against the Shorivger Trust and Raphael Grossman, and cross claims by the Shorivger Trust and Raphael Grossman against the Debtor, Yaakov Pollak and Moshe Pollak. Motion ¶¶ 20, 21; Exhibit 8. The action was removed to this Court on April 9, 2025 and is pending as Adv. Pro. No. 1-25-01037. Motion ¶ 22; ECF No. 31.

***E. The Proposed Settlement***

26. Upon entry of an approval order, the Shorivger Trust will pay the Trustee $180,000 "to pay all of the allowed administrative claims (Chapter 11 and Chapter 7), allowed filed priority claims and allowed filed general unsecured claims approved by the Court. In the event the amount of such claims approved by the Court is less than $180,000, the Trustee shall return the difference to the Shorivger Trust." Stipulation ¶ 1; Motion ¶ 34.

27. Upon payment and the order becoming final, the Adversary Proceedings are to be dismissed with prejudice and the parties are to release each other from all claims relating to the case and the Adversary Proceedings, except that nothing is to "prevent, bar, preclude or hinder" the Shorivger Trust from asserting "any defense or claim of any type, kind or nature against Yaakov Pollak and Moshe Pollak." Stipulation ¶ 2; Motion ¶ 35.

## ARGUMENT

### I. THE COURT MUST INFORM ITSELF OF THE FACTS BEARING ON THE LITIGATION BEING SETTLED

28. A compromise may be approved under Bankruptcy Rule 9019 only if it is fair, equitable and in the best interests of the estate. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). The court must "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).

29. To perform that function the court must "inform itself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) (quoting *TMT Trailer Ferry*, 390 U.S. at 424). The Second Circuit's factors, on which the Motion itself relies, are set out in *Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007), and are quoted at paragraph 40 of the Motion.

30. A trustee's business judgment is entitled to deference, but the deference attaches to a judgment that has actually been exercised on the relevant claims and defenses. It is not a substitute for the analysis. The burden of persuasion rests on the proponent of the settlement, as the Motion acknowledges. Motion ¶ 40.

## II. THE IRIDIUM FACTORS, APPLIED TO THIS RECORD, DO NOT SUPPORT APPROVAL

31. Probability of success. The first factor asks the Court to balance the litigation's possibility of success against the settlement's future benefits. The Motion offers no assessment of the possibility of success. It does not say what the Trustee thinks the odds are on the Real Property Law § 320 claim, on the usury issue, or on the objection to Claim 3-1. What the record does contain is a ruling of this Court denying the Shorivger Trust's motion to dismiss, denying its motion for summary judgment, and inviting the Debtor to renew its first cross claim. Motion ¶¶ 19, 28. On the only evidence before the Court, the estate's claims have survived every challenge made to them.

32. Complexity and duration. The second factor asks about the likelihood of complex and protracted litigation, with its attendant expense, inconvenience and delay, including the difficulty of collecting on a judgment. The Motion asserts that continued litigation would be costly and prolonged. Motion ¶¶ 42, 45, 49. It supplies no estimate of the cost, no estimate of the time, and no analysis of collectability. An assertion of expense without a figure cannot be weighed against a recovery that has also not been quantified.

33. Paramount interests of creditors. The third factor asks about the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors do not object to or affirmatively support the settlement. The Motion establishes that the

filed claims other than the settling parties' own total $115,665.71 and that the settlement would pay them. Motion ¶ 29. It does not establish that $180,000 is the best available means of paying them, which is the question the factor actually poses. The Motion identifies no creditor that supports the settlement, does not state the position of the chapter 11 professionals whose claims make up the bulk of the filed claims, and does not state the position of the United States Trustee.

34. Other parties in interest. The fourth factor asks whether other parties in interest support the settlement. So far the record runs the other way. The Debtor's sole member objects. Joseph and Lieba Pollak have also objected, and they ask the Court to reject the settlement in favor of a sale process. ECF No. 127. Yeshiva Karlin Stolin Beth Aaron Visrael Rabbinical Institute has moved for relief from the stay expressly in relation to this Motion, returnable at the same hearing. ECF Nos. 120, 124. The two individuals whose cross claims the Stipulation purports to dismiss with prejudice are not parties to it and did not consent to it. Stipulation, signature pages. No party in interest has come forward in support.

35. Competency of counsel. The fifth factor asks about the competency and experience of counsel supporting the settlement and the experience and knowledge of the bankruptcy judge reviewing it. Pollak does not question the experience of the Trustee or of his counsel, and this factor favors approval. It cannot, however, substitute for the analysis the other factors require. Experienced counsel is a reason to credit a reasoned explanation, not a reason to dispense with one.

36. Nature and breadth of the releases. The sixth factor, framed in *Iridium* in terms of releases obtained by officers and directors, directs the Court to the nature and breadth of the releases the settlement produces. Here they are as broad as they could be: dismissal with prejudice of both actions, a mutual general release of all claims relating to this case and the

Adversary Proceedings, and an express carve out preserving the Shorivger Trust's claims against two individuals who receive nothing under the Stipulation and did not sign it. Stipulation ¶ 2. This factor weighs heavily against approval, for the reasons developed in Point X below.

37. Arm's length bargaining. The seventh factor asks the extent to which the settlement is the product of arm's length bargaining. The Motion asserts that it is. Motion ¶¶ 30, 33, 50. No declaration supports the assertion. The Court has not been told who negotiated, what was demanded, what was offered, or how the figure of $180,000 was arrived at. Pollak does not suggest bad faith. He observes only that an unsupported assertion of arm's length dealing establishes nothing that the Court can weigh.

## III. THE MOTION RESTS ON NO EVIDENCE AND SHOWS NO INVESTIGATION

38. The Motion is signed by counsel. It is not accompanied by a declaration or affidavit from the Trustee or from any other person, and no such statement appears elsewhere on the docket in support of the relief requested.

39. There is no appraisal of the Property and no broker opinion of value. The Trustee has filed monthly operating reports since he took over the Property. ECF Nos. 101, 102, 103, 108, 114, 119. The Motion does not reconcile them with the settlement it proposes. The Stipulation recites that the Trustee held $87,120.98 on July 13, 2026. The Motion recites that he held $87,089.95 on August 5, 2026. The balance went down. The Motion does not explain how six months of operating three buildings left the estate holding less cash at the end of the period than at the start, or what part the rents play in the economics of this settlement.

40. The deeper problem is not the absence of exhibits. It is the absence of any account of what the Trustee did before he agreed to settle. A trustee is charged with collecting and reducing to money the property of the estate and with investigating the financial affairs of the

debtor. 11 U.S.C. § 704(a)(1), (a)(4). Business judgment is owed deference because it is presumed to rest on that work. Where the Motion does not describe the work, there is nothing for the presumption to attach to.

41. The Motion does not say whether the Trustee reviewed the thirteen Heter Iska instruments, whether he computed the effective rates they carry, whether he compared the sums stated on them against the checks that funded them, whether he read the two contemporaneous letters concerning the Deed, whether he considered why the Deed went unrecorded for a year and a half, whether he considered the advances that continued for more than a year after the Deed was signed, whether he examined how and when the Shorivger Trust parties came to control Claim 4-1, or whether he consulted the counsel who had litigated the adversary proceeding to a successful conclusion on two dispositive motions. It does not say that he interviewed the Debtor's principal. Nor does it say that he read the record already assembled in the two adversary proceedings, which includes a 484-page deposition of Israel Grossman, a deposition of Yaakov Pollak, an expert affirmation on the Heter Iska instruments, and completed discovery. Adv. Pro. No. 1-25-01037, ECF Nos. 10, 19; Adv. Pro. No. 1-25-01105, ECF No. 12.

42. Attorney argument is not a substitute for the record the Court needs. On this showing the Court has no way to determine where the lowest point in the range of reasonableness lies, and therefore no way to determine whether the settlement is above it.

## <u>**IV. THE MOTION NEITHER VALUES WHAT THE ESTATE IS GIVING UP NOR EXAMINES THE ALTERNATIVES**</u>

### <u>***1. The value of the claims being released***</u>

43. The Motion's argument is that the settlement pays the allowed claims in full and that nothing further is achievable. Motion ¶¶ 42, 43, 49. Paying creditors in full is a benefit, but it

is not the test. The question under Rule 9019 is whether the consideration received bears a reasonable relationship to the value of what the estate is surrendering. On that question the Motion is silent.

44. The figures in the Motion illustrate the size of the gap. The Motion states that the Debtor scheduled the Property at $5,066,800, and in the same paragraph refers to “a sale which could be $8,000,000.” Motion ¶ 47. The Motion does not explain the difference between those two numbers or say which one the Trustee relied on. The first mortgage stood at $2,761,930.08 as of March 23, 2026 and accrues at nine percent. Motion ¶ 46. The Shorivger Trust’s Claim 3-1 was filed at $2,834,567 but is asserted at $5,227,730.08 as of March 23, 2026. Motion ¶ 46.

45. Using the Trustee’s own numbers, and without conceding any of them, the outcomes span a very wide range. If the Shorivger Trust’s claim is valid in the full asserted amount, a sale at $8,000,000 leaves the estate essentially nothing after the first mortgage and Claim 3-1, which is the Trustee’s implicit premise. If Claim 3-1 is voided or substantially reduced, the same sale leaves roughly $5.2 million before costs, against non-professional claims of $115,665.71. Even at the scheduled value of $5,066,800, the estate would be left with roughly $2.3 million before costs. The distance between the Trustee’s settlement and a successful outcome is measured in millions of dollars.

***<u>2. The alternatives to settlement</u>***

46. The Motion also does not tell the Court what else the Trustee considered. Settlement is one way to realize value on a disputed asset. It is not the only one, and the Motion does not address any other.

47. The Court has not been told whether the Property was appraised, whether a broker was consulted, whether any inquiry was made into what the Property would bring on the market,

what a sale would net after commissions, transfer taxes, closing costs and liens, whether the estate's interest could be marketed subject to the disputed claim, or whether the Trustee weighed prosecuting the adversary proceeding to judgment and then selling against accepting $180,000 now. Pollak does not contend that the Property must be sold. He contends that the Court cannot evaluate a settlement without knowing whether realistic alternatives existed and what they were worth.

48. There is a further alternative the Motion does not mention. The asset the estate is giving up is a cause of action, and a cause of action is property of the estate that may be sold under 11 U.S.C. § 363(b). A settlement that returns the estate's claims to the defendant is in substance a disposition of estate property to that defendant. Courts outside this Circuit have held that a bankruptcy court presented with such a settlement should consider whether the property might draw a higher price through a competitive process. *Cadle Co. v. Mims (In re Moore),* 608 F.3d 253 (5th Cir. 2010); *In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. 415 (B.A.P. 9th Cir. 2003). Those decisions are persuasive rather than binding, but the principle behind them is simply the one Rule 9019 already states, which is that the estate should realize what its property is worth. The Motion does not indicate that the estate's claims, or the Property, were offered to anyone other than the party being released. Joseph and Lieba Pollak have separately objected on precisely this ground, asking that the Court direct a sale process rather than approve the settlement. ECF No. 127. Pollak supports that relief.

49. The point is not that the Debtor is certain to prevail. The point is that the Motion does not tell the Court what the Trustee thinks the odds are, what the litigation would cost, what the Property is worth, or why $180,000 is the right price for claims of this magnitude. A

settlement that transfers a claim of this size requires some articulated relationship between price and value. None appears.

## V. THE MOTION DOES NOT ADDRESS WHAT THE DEBTOR RECEIVED FOR THE DEED

50. The Deed conveyed the Debtor's only significant asset. The advances the Deed was given to secure were made to Pollak individually and to YGM Group LLC, an entity in which the Debtor has no interest. Exhibit 1. The Debtor was not a party to any of the thirteen instruments, and none of the checks that funded them is payable to the Debtor. Exhibit 1; Schedule A.

51. The Motion does not say otherwise. It states that the Shorivger Trust asserts the Deed was given "in consideration of $2,834,567.00 paid by Shorivger Trust in accordance with instructions given by the Debtor's principal." Motion ¶ 14. That is a description of money paid to other people at the principal's direction. The Motion nowhere states that the Debtor received anything.

52. What the Debtor received for its building is not a peripheral question. It bears directly on at least three matters the Trustee was obliged to weigh. First, it is evidence going to the central issue in the adversary proceeding, because an owner does not ordinarily convey real property for nothing, and a transfer made without consideration to secure another person's obligations looks like security rather than a sale. Second, it bears on whether Claim 3-1 is a claim against this estate at all, a question the Motion itself raises and then leaves unresolved when it observes that the Shorivger Trust's claim may be "only against the Debtor's principal, Yaakov Pollak." Motion ¶ 48. Third, a transfer of the debtor's principal asset for no

consideration is the classic subject of an avoidance analysis, and whether any such claim remains available to this estate, and on what timing, is a question the Motion does not reach.

53. Pollak does not ask the Court to resolve any of these questions now. He asks the Court to note that a trustee who proposes to release all claims arising out of a transfer of the estate's only real asset should be able to tell the Court what the estate got for it, and that this Motion does not.

## VI. THE MOTION DOES NOT ADDRESS WHETHER THE OBLIGATIONS SECURED BY THE DEED ARE USURIOUS

54. New York Penal Law § 190.40 makes it a felony to knowingly charge, take or receive interest on a loan at a rate exceeding twenty-five percent per annum. General Obligations Law § 5-521(3) preserves the criminal usury defense for corporate borrowers notwithstanding the general bar in section 5-521(1). For a natural person the ceiling is lower. General Obligations Law § 5-501 and Banking Law § 14-a set the civil rate at sixteen percent per annum, and several of the instruments name Pollak individually as the recipient of the advance. General Obligations Law § 5-511(2) provides that where it appears that any "bond, bill, note, assurance, pledge, conveyance, contract, security or any evidence of debt" was taken or received in violation of the usury laws, "the court shall declare the same to be void."

55. The New York Court of Appeals has confirmed the consequence. A loan proven to violate the criminal usury statute carries the same consequence as any other usurious loan, which is complete invalidity of the instrument. *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320 (2021).

56. On this record the question is not close enough to be passed over in silence. Twenty-four percent per annum is above the sixteen percent civil ceiling that governs the

advances made to Pollak individually. As to the advances made to YGM Group LLC, the monthly charge computed against the sums actually advanced rather than against the stated principal exceeds twenty-five percent per annum on simple interest, and the sums withheld at funding, annualized over terms as short as thirty-six days, carry the effective rate far higher still. Section 3(a), which treats money not returned when due as reinvested on the same terms, compounds the charge. Whether these instruments cross the statutory thresholds, and what follows if they do, goes to the heart of the value of Claim 3-1 and of the Deed given to secure the obligations. The Motion does not compute the rate, does not mention the sums withheld at funding, and does not identify the statutes.

57. The label the parties used does not resolve the question. Section 3(b) of the printed form itself provides that any mention of "a loan, interest, points, or other similar terms are for legal purposes only." A court asked to apply the usury statutes looks to the substance of the transaction rather than the form in which it was cast. Whether these particular instruments are loans or are something else is a question that requires analysis of the documents and the course of dealing. The parties have already joined that issue. The Shorivger Trust submitted an expert affirmation on the Heter Iska instruments in opposition to summary judgment. Adv. Pro. No. 1-25-01037, ECF No. 19, attachment 17. The Motion does not mention it.

58. There are further questions that a trustee would be expected to work through, including whether and how the estate may assert a borrower's defense where the Debtor pledged its property to secure the obligations of others, and what limitations periods apply to the various theories. Pollak does not ask the Court to decide any of them on this Motion. He asks the Court to observe that the Trustee has not addressed a single one. The Motion does not mention the Heter Iska instruments, the rates, Penal Law § 190.40, General Obligations Law § 5-501, § 5-511

or § 5-521, Banking Law § 14-a, or *Adar Bays*. A settlement proponent who has not evaluated the principal defenses to the claim being settled has not carried the burden the Motion concedes he bears.

## VII. THE MOTION DOES NOT ADDRESS THE REAL PROPERTY LAW § 320 CLAIM THAT ALREADY SURVIVED DISMISSAL IN THIS COURT

59. Real Property Law § 320 provides that "[a] deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage."

60. That is the Debtor's first cross claim, and it does not depend on proving a usurious rate. It rests on documents. Grossman prepared and Pollak signed a letter making the transfer contingent on non-payment by a date certain. Grossman prepared and signed a letter agreeing not to record the Deed so long as interest was kept current. The Shorivger Trust continued to lend against the Property for more than a year after taking what it now calls an outright conveyance, and never asked the Debtor to give up management or the rents. The Deed sat unrecorded for a year and a half, which had the effect of avoiding mortgage recording tax. Grossman's own affirmation, submitted in support of the motion to dismiss, acknowledges that the Debtor retained a right to repurchase the Property by paying the advances in full. Exhibits 3 and 6.

61. If the Deed is determined to have been delivered as security for the underlying obligations, it is to be treated as a mortgage under Real Property Law § 320 rather than as a conveyance. The Shorivger Trust would then be required to establish and enforce whatever legally enforceable indebtedness, if any, remains secured by that mortgage, subject to all

applicable defenses, and the estate would retain its equity of redemption in the Property rather than holding a $180,000 check.

62. This Court has already denied a motion to dismiss this claim and denied the counterparty's motion for summary judgment on it, and it gave the Debtor leave to renew. Motion ¶¶ 19, 28. A claim in that posture is not a nuisance claim. The Trustee is free to conclude that it should nonetheless be settled, but he is obliged to explain why, and the Motion does not mention the claim at all.

## VIII. THE MOTION DOES NOT ADDRESS THE SHORIVGER TRUST'S CONTROL OF THE FIRST MORTGAGE

63. The Motion discloses in a single clause that Claim 4-1, the first mortgage claim, is "now controlled by the Shorivger Trust parties." Motion ¶ 29. The Motion then treats that mortgage, at $2,761,930.08 and accruing at nine percent, as a fixed senior charge that consumes the Property's value. Motion ¶ 46.

64. The Shorivger Trust's assertion of both fee ownership of the Property and control of the first mortgage against it raises substantial questions concerning the ownership, validity, enforceability and economic treatment of Claim 4-1 that the Motion does not address. Among them: when and from whom the Shorivger Trust parties acquired that claim and on what terms; whether the acquisition of a mortgage by a party asserting fee title presents a question of merger; whether the nine percent accrual that erodes the estate's position during the pendency of this case runs in favor of the party across the negotiating table; and whether Claim 4-1 has been examined at all.

65. The answers matter in dollars. Whether the senior encumbrance the Trustee treats as fixed is in fact fixed, and in whose favor, moves the analysis of the estate's position by

millions. Pollak does not ask the Court to resolve any of these questions now, and he recognizes that merger turns on the intent of the parties. He asks the Court to note that the Motion does not acknowledge that the settling counterparty sits on both sides of the capital structure, let alone analyze what follows from it.

## IX. THE PAYMENT IS CAPPED AND REVERTS, SO NOTHING CAN REACH THE ESTATE BEYOND THE COST OF ADMINISTERING IT

66. The $180,000 is not a payment to the estate in the ordinary sense. Under Stipulation ¶ 1, the money is earmarked to pay allowed administrative, priority and general unsecured claims, and any excess over the amount of allowed claims reverts to the Shorivger Trust. The transaction is therefore not "$180,000 for the estate's claims." It is $180,000 to the extent, and only to the extent, necessary to pay the allowed claims, with the unused balance returned to the settling defendant, in exchange for extinguishing claims the Motion itself values in the millions. By construction, the settlement forecloses any surplus.

67. The economics are worth stating plainly. The estate holds $87,089.95. Motion ¶ 29. The general unsecured claims and chapter 11 professional claims total $115,665.71. The remaining call on the money is chapter 7 administrative expense, which the Motion candidly states will include the Trustee's commission and the compensation of the Trustee's counsel and accountant, to be sought later. Motion ¶ 29. What the Shorivger Trust is buying, in substance, is a release of the estate's claims in exchange for funding the cost of closing the case.

68. The Court should not have to reconstruct this arithmetic from a paragraph of narrative. Before any order is entered the Trustee should be required to file a pro forma distribution analysis showing current estate cash, anticipated chapter 7 administrative expense itemized by category, the Trustee's commission computed under 11 U.S.C. § 326, anticipated

professional compensation, allowed priority claims, allowed general unsecured claims, how much of the $180,000 would actually remain available for distribution to creditors, and how much would be returned to the Shorivger Trust. Without that schedule neither the Court nor any creditor can tell what this settlement actually delivers.

69. The reverting payment provision also creates an ambiguity that should be resolved before any order is entered. Stipulation ¶ 1 measures the refund against "the amount of such claims approved by the Court" without reference to the $87,089.95 the estate already holds. It is not clear from the text whether the estate's existing cash is to be applied to claims before the settlement proceeds, in which case a portion of the $180,000 would be refunded, or after. The difference is real money and the Court should not have to guess at it.

70. That is a permissible thing for a trustee to negotiate if the underlying claims are truly worth little. It is not a permissible thing for a court to approve without knowing what the claims are worth. Under *Iridium*, the paramount interests of creditors and the position of other parties in interest are both factors, 478 F.3d at 462, and the only party in interest whose economic position turns on the answer has objected.

## X. THE STIPULATION DISPOSES OF CLAIMS THE TRUSTEE DOES NOT OWN, AND THE RELEASES ARE BROADER THAN THE SETTLEMENT REQUIRES

71. This objection would remain even if the price were right. The Trustee's authority extends to property of the estate. 11 U.S.C. §§ 323, 541, 704. Cross claims belonging to Yaakov Pollak and Moshe Pollak individually are not property of this estate, and the Trustee may not compromise, release or dismiss them.

72. The Stipulation nevertheless provides that the "Adversary Proceedings" are to be "dismissed with prejudice." Stipulation ¶ 2(a). The defined term includes the Powercap action,

Motion ¶ 20, and the Powercap action consists at this point of nothing but cross claims, including cross claims held by Yaakov Pollak and Moshe Pollak against the Shorivger Trust and Raphael Grossman. Motion ¶ 21. Neither Pollak signed the Stipulation. Neither consented to the dismissal of his own claims. Stipulation, signature pages. Both appear in that proceeding pro se. Adv. Pro. No. 1-25-01037 (docket). The Trustee thus asks the Court to dismiss with prejudice, on a motion in the main case, the claims of two unrepresented non-debtor parties who were served with the Motion as creditors and not as the parties whose claims it would extinguish.

73. The asymmetry is explicit rather than incidental. The same paragraph that dismisses the action with prejudice provides that nothing "shall be in any way construed or interpreted to prevent, bar, preclude or hinder" the Shorivger Trust "from asserting any defense or claim of any type, kind or nature against Yaakov Pollak and Moshe Pollak." Stipulation ¶ 2(b). The result is that the non-debtors lose their affirmative claims and keep their exposure.

74. A bankruptcy court may not extinguish the claims of non-consenting non-debtors against non-debtors. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). The principle applies with at least equal force where the vehicle is a settlement between a trustee and a defendant rather than a plan, and where the non-debtors whose claims are being given away receive nothing and are not even parties to the instrument.

75. Separately, and even as to claims the Trustee does own, the releases are broader than this settlement requires. The Court is not being asked simply to approve a payment. It is being asked to approve a dismissal with prejudice of two actions, a general release of all claims "relating to this case and the Adversary Proceedings" without limitation to the matters actually compromised, an express preservation of the settling party's claims against two individuals, and language that will predictably be invoked hereafter to argue that those individuals' own claims

were extinguished along the way. Nothing in the Motion explains why a release of that breadth is necessary to buy the peace the Trustee says he is buying. Under the sixth *Iridium* factor, breadth and asymmetry of this kind weigh against approval.

76. If the Trustee's intention was to dismiss only the Debtor's own cross claims, the Stipulation does not say so, and an order approving it as written would predictably be offered against Pollak on preclusion grounds. At a minimum, no order should be entered unless the Stipulation is conformed and the order contains the express savings language set out in Point XI below.

## <u>XI. ALTERNATIVE RELIEF</u>

77. If the Court is not prepared to deny the Motion outright, Pollak respectfully suggests that the following would allow the Court to decide the question on an adequate record rather than on the present one. The Court could adjourn the hearing and direct the Trustee to file a declaration setting out what he reviewed, whom he consulted, what investigation he conducted into the estate's claims, and what he concluded about the probability of success on those claims and the cost of pursuing them. The Court could direct that a current appraisal or broker opinion of value of the Property, and an accounting of the rents collected since February 2026, be filed. The Court could direct the Trustee to file the pro forma distribution analysis described in Point IX. The Court could direct the Trustee to address the usury issue, the Real Property Law § 320 claim, the consideration the Debtor received for the Deed, and the status and history of Claim 4-1. The Court could direct that the estate's causes of action be exposed to the market before they are released. The Court could set the matter for an evidentiary hearing. Any combination of these would give the Court a middle course between approving the settlement on the present record and rejecting it outright.

78. In addition, and whatever else the Court does with the Motion, no order approving the Stipulation should be entered unless it provides substantially as follows:

No provision of the Stipulation or of this Order shall operate as a release, dismissal, waiver, bar, estoppel, impairment, or adjudication of any claim, counterclaim, cross claim, defense, affirmative defense, right of recoupment, or other cause of action belonging individually to Yaakov Pollak or Moshe Pollak, none of which is property of the Debtor's estate, and nothing herein shall be construed to bind Yaakov Pollak or Moshe Pollak in their individual capacities.

79. That language costs the estate nothing. If the Trustee is correct that he never intended to touch the individual claims, he can have no objection to saying so in the order.

## RESERVATION OF RIGHTS

80. Pollak reserves all rights, including the right to supplement this objection, to be heard at the hearing on the Motion and at any adjourned hearing, to respond to any reply or supplemental submission by the Trustee or the Shorivger Trust, to seek discovery in connection with the Motion, to submit evidence should the Court set an evidentiary hearing, to submit or support a higher and better offer for the estate's causes of action, and to assert any and all claims, defenses, counterclaims, cross claims and rights of recoupment in his individual capacity. Nothing in this objection is intended as, or shall be construed as, a waiver of any right or an admission of any fact.

## CONCLUSION

81. For the foregoing reasons, Pollak respectfully requests that the Court deny the Motion, or in the alternative adjourn the hearing and grant the relief described in Point XI above, including the savings language set out therein, and grant such other and further relief as is just.

Dated: Rockville Centre, New York
September 10, 2026

**LAW OFFICES OF CHARLES WERTMAN P.C.**
*Counsel to Yaakov Pollak*

By: /s/ Charles Wertman
Charles Wertman, Esq.
100 Merrick Road, Suite 304W
Rockville Centre, New York 11570
Telephone: (516) 284-0900
charles@cwertmanlaw.com

# SCHEDULE A

## Summary of the Heter Iska Instruments Annexed as Exhibit 1

| Ex. | Date signed | Amount stated on instrument | Amount funded | Managing Partner (recipient) | Section 2(d) terms as written | Return date |
|---|---|---|---|---|---|---|
| A-1 | Nov. 4, 2014 | $100,000 | [confirm] | Yaakov Pollak / YGM Group LLC | 2%; “annual” struck, “fixed”; payable monthly | Jan. 31, 2015 |
| A-2 | Nov. 18, 2014 | $115,000 | $110,400 | Yaakov Pollak / YGM Group LLC | “4% fixed” plus “2% monthly”; “annual” struck | Jan. 31, 2015 |
| A-3 (first) | Apr. 17, 2015 | $120,000 | [confirm] | YGM Group LLC | “2% monthly + 5 points”; “annual return” struck | June 30, 2015 |
| A-3 (second) | Apr. 20, 2015 | $30,000 | [confirm] | Yaakov Pollak / YGM Group LLC | “2% monthly + 5%”; “annual return” struck | July 30, 2015 |
| A-4 | May 12, 2015 | $3__,000 [confirm] | [confirm] | YGM Group | “2% monthly”; “annual return” struck | Aug. 31, 2015 |
| A-5 | 2015 [confirm] | $165,000 | [confirm] | YGM Group | 2%; “annual” struck; notation “if kept after 6/25/15” | [blank] |
| A-6 | July 17, 2015 | $108,000 | [confirm] | YGM Group LLC | “2% monthly”; “annual return” struck | [blank] |
| A-7 | Aug. 12, 2015 | $27,000, altered to $29,160 | $27,000 | YGM Group LLC | “2% monthly”; “annual return” struck | [blank] |
| A-8 | Mar. 30, 2016 | $65,000 | [confirm] | YGM Group | “2% monthly”; “annual return” struck | Dec. 31, 2016 |
| A-9 | Apr. 28, 2016 | $165,000 | $150,125 | Yaakov Pollak / YGM Group | “2% monthly”; “annual return” struck | Dec. 31, 2016 |
| A-10 | May 25, 2016 | $200,000 | $182,000 | YGM Group / Yaakov Pollak | “2% monthly”; “annual return” struck | Aug. 1, 2016 |
| A-11 | Nov. 17, 2016 | $218,000 | $200,000 | YGM Group / Yaakov Pollak | “2% monthly”; “annual return” struck | Dec. 23, 2016 |
| A-12 | July 2017 [confirm] | $104,640 [confirm] | [confirm] | [confirm] | Different form; 50/50 division of profits; no rate stated | Jan. 1, 2018 |

| | | | | | | |
|---|---|---|---|---|---|---|
| A-13 | Oct. 23, 2014 | n/a | n/a | YGM Group LLC | Chase deposit slip | n/a |

*Note: the entries above are taken from the face of the instruments and from the checks and bank records annexed within Exhibit 1. Entries marked "[confirm]" should be verified against the originals before filing.*

# SCHEDULE B

## Computations

### Part 1. Amount stated against amount funded, and the monthly charge measured against the amount funded.

| Ex. | Stated | Funded | Shortfall | 2% of stated (monthly charge) | Charge ÷ funded (per month) | Per annum (× 12) |
|---|---|---|---|---|---|---|
| A-2 | $115,000 | $110,400 | $4,600 | $2,300 | 2.083% | 25.000% |
| A-9 | $165,000 | $150,125 | $14,875 | $3,300 | 2.198% | 26.377% |
| A-10 | $200,000 | $182,000 | $18,000 | $4,000 | 2.198% | 26.374% |
| A-11 | $218,000 | $200,000 | $18,000 | $4,360 | 2.180% | 26.160% |
| A-7 | $29,160 | $27,000 | $2,160 | n/a | n/a | n/a |

### Part 2. The sums withheld at funding, annualized over the stated term.

| Ex. | Shortfall as % of funded | Signed | Returnable | Term (days) | Annualized shortfall |
|---|---|---|---|---|---|
| A-2 | 4.167% | Nov. 18, 2014 | Jan. 31, 2015 | 74 | 20.55% |
| A-9 | 9.908% | Apr. 28, 2016 | Dec. 31, 2016 | 247 | 14.64% |
| A-10 | 9.890% | May 25, 2016 | Aug. 1, 2016 | 68 | 53.09% |
| A-11 | 9.000% | Nov. 17, 2016 | Dec. 23, 2016 | 36 | 91.25% |

### Part 3. Two percent per month.

Simple: 2.000% × 12 = 24.000% per annum.
Compounded monthly, as section 3(a) of each instrument contemplates: (1.02) raised to the twelfth power, less one, = 26.824% per annum.

*Note: the funded amounts are taken from the checks and bank records annexed within Exhibit 1 and are subject to confirmation against the originals. Terms are computed from the date of signature to the return date written on the instrument. Instruments on which no return date was written are omitted from Part 2.*